IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | 03-cr-554-01 |
| v. | : | |
| | : | APPELLATE ACTION |
| CARLOS MANUEL PEREZ | : | 06-1694 |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                                 **March 9, 2006**

At his sentencing hearing, Defendant Carlos Manuel Perez ("Perez") argued for a reasonable sentence based on the sentencing disparity between crack cocaine and powder cocaine. I found a reasonable sentence need not reflect the sentencing disparity based on an individualized assessment of the facts of Perez's case. On February 22, 2006, Perez filed a timely notice of appeal to the Third Circuit from the judgment of sentence in the above-captioned matter. The Court submits this memorandum opinion in accordance with Local Appellate Rule 3.1. Because I do not know what issues Perez will raise on appeal, I will discuss the issues raised by Perez at his sentencing hearing and address the reasonableness of his sentence in light of underlying legal standards and the facts of this case.

1

**BACKGROUND**[1]

In April 2003, Perez was a suspect in the attempted murder of two individuals.  On April 24, 2003, the Philadelphia police officers executed a search warrant at the apartment Perez shared with his girlfriend, Bobbi Compton.  Perez was incarcerated at the time of the search but Compton was present.  During the search, Compton gave written consent for the officers to search two vehicles: a 2002 Mercedes-Benz CLK and a 1995 green Pontiac Grand Am, both of which were parked at the searched residence.[2]  Nothing of evidentiary value was recovered from the Mercedes-Benz CLK.  A search of the Pontiac Grand Am recovered a duffel bag in the trunk containing: (1) 39.5 grams of cocaine base ("crack"), (2) 990.5 grams of cocaine, (3) 275.6 grams of marijuana, (4) a loaded Rohm .38 caliber revolver with an obliterated serial number, and (5) an unloaded .22 caliber Beretta semiautomatic handgun.  The police also seized Perez's Pennsylvania non-drivers license identification card and his passport from the duffel bag containing the contraband.  Although both Perez and Compton had access to the vehicle, police investigation revealed none of the items seized from the trunk belonged to Compton.

---

[1]The background facts were taken from the Pre-Sentence Investigation Report ("PSIR"), which was prepared by the United States Probation Office.  The PSIR summarizes facts consistent with the evidence gathered by the government and presented at trial.  Neither the Government nor Perez filed any written objections to the PSIR.  At the sentencing hearing, defense counsel questioned one criminal history notation for a reckless conduct conviction.  Perez did not deny the conviction; he merely clarified he was arrested only once for this charge.  The Court fully adopted and credited the PSIR with few modifications as well as the factual findings and guideline application and calculation set forth in the report.

[2]Both vehicles were registered in Compton's name, but she informed the Government she drove the Mercedes-Benz CLK exclusively and Perez drove the Pontiac Grand Am exclusively.  She further explained the Pontiac Grand Am was registered in her name because Perez did not have a valid driver's license and thus could not obtain the required insurance necessary to remove the car from the dealer's lot.

On August 28, 2003, a four-count indictment issued, charging Perez with one count of possession with the intent to distribute crack in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), one count of possession with the intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), one count of possession with the intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(d), and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).  On June 20, 2005, the Court declared a mistrial after the jury could not reach a unanimous verdict.  Perez was convicted after a second jury trial on all four counts of the indictment on October 27, 2005.  I sentenced Perez on February 17, 2006 to a total term of imprisonment of 252 months to be followed by a five-year term of supervised release.[3]

## DISCUSSION

In *United States v. Booker*, 524 U.S. 220 (2005), the Supreme Court held the United States Sentencing Guidelines violate the Sixth Amendment.  The Court determined a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury.  As a remedy, the Court severed the statutory provision making the Guidelines mandatory, thereby rendering the Guidelines advisory.  *Booker*, 540 U.S. at 245 (excising 18 U.S.C. §§ 3553(b)(1)).  In the wake of *Booker*, "district courts, while not bound to apply the guidelines, must consult those guidelines and take them into account when sentencing."  *Id.* at

---

[3]To ensure compliance with the statutory minimum and maximum sentences applicable to each count of conviction, I crafted the judgment based on each count.  A term of 168 months was imposed on Counts 1 and 2 to be served concurrently.  Count 3 resulted in a term of sixty months of prison time to be served concurrently with Counts 1 and 2.  The mandatory minimum of five years, plus an additional two years, applied to Count 4, resulting in a total term of 84 months to be served consecutively to Counts 1 and 2.  I imposed five years of supervised release on Counts 1, 2 and 4, and a two-year period of supervised release on Count 3, with all such terms to be served concurrently.

767.  The Guidelines, however, do not receive greater weight than the other factors outlined in 18 U.S.C. § 3553(a), which controls sentencing post-*Booker*.

Section 3553(a) sets forth the relevant factors a district court must consider when imposing a reasonable sentence that is "sufficient, but not greater than necessary."  18 U.S.C. § 3553(a).  The relevant factors are: (1) the nature and circumstances of the offense and history and characteristics of the defendant; (2) the need to impose a sentence to reflect the seriousness of the offense, promote respect for the law, afford deterrence, protect the public from defendant's further crimes, and provide the defendant with needed educational and vocational training and other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the sentencing ranges recommended by the Guidelines; (5) any pertinent policy statement issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to victims.  18 U.S.C. §§ 3553(a)(1)-(7).

The district court must demonstrate a meaningful consideration of the § 3553(a) factors and set forth the reasons underlying its decision.  *United States v. Cooper*, No. 05-1447, slip op. at 12 (3d Cir. Feb. 14, 2006) (precedential opinion).  A proper § 3553(a) analysis, however, does not require a sentencing judge discuss each factor, make findings as to each factor, or consider every argument by a litigant if the argument lacks merit.  *Id.*  The Third Circuit merely requires the "record make[] clear the court took the factors into account in sentencing." *Id.*  Additionally, simply because a sentence falls within the Guidelines range does not make the sentence presumptively reasonable.  Such a conclusion directly contravenes *Booker* itself, 543 U.S. at 259-260 (explaining the Guidelines are only one factor that controls federal sentencing after

4

excising the mandatory provision), and the Third Circuit admonishes such an approach by federal district judges sitting within the Circuit, *Cooper*, slip op. at 13, 17 (holding "a within-guidelines sentence is not necessarily reasonable *per se*).  "Otherwise, as several Courts of Appeals have concluded, we would come close to restoring the mandatory nature of the guidelines excised in *Booker*."  *Cooper*, slip op. at 17.

To best fulfill the mandate set by *Booker* and Third Circuit law explaining *Booker* implications for sentencing, this Court has adopted a three-step procedure to govern federal sentencing.[4]  First, I determine the statutory minimum and maximum sentence applicable to each count of conviction.  Second, I conduct a step-by-step analysis of the Guidelines to determine the Guidelines range applicable to the case and consider whether the Guidelines or Sentencing Commission policy statements justify any departures from that range.  Third, I consider the other sentencing factors set forth in § 3553(a) factors and craft a sentence balancing those factors. This analytical framework was applied to Perez's case, and I will address each step in turn.

The maximum sentence for possession with the intent to distribute crack and cocaine is forty years incarceration, with a minimum term of imprisonment of five years.  21 U.S.C. § 841(b)(1)(B).  As Class B felonies, both the crack and cocaine convictions also mandate a period of supervised release of at least four years but no more than five years, a maximum fine of $2,000,000 and a $100 special assessment.  18 U.S.C. §§ 3013(a)(2), 3559(a), 3571(b), 3583(b)(1); 21 U.S.C. § 841(b)(1)(B).  By statute, probation is prohibited.  21 U.S.C. § 841(b)(1)(B).  The statutory maximum sentence for possession with the intent to distribute marijuana is five years incarceration, with a required term of supervised release of at least two

---

[4]Although the Third Circuit does not require such a statement, I routinely begin my sentencing analysis for the record by recognizing *Booker* effectively rendered the Guidelines advisory, but § 3553(a), which now governs sentencing, still requires the Court calculate and consider the applicable Guidelines range.

years.  21 U.S.C. § 841(b)(1)(D); *see also* 18 U.S.C. § 3583(b)(2) (limiting supervised release period to no more than three years for a Class D felony).  This offense qualifies as a Class D felony, 18 U.S.C. § 3559(a), for which a maximum fine of $250,000 applies, 18 U.S.C. § 3571(b); 21 U.S.C. § 841(b)(1)(D).  A $100 special assessment also is required.  18 U.S.C. § 3013(a)(2).  The statutory maximum consecutive sentence for possession of a firearm in furtherance of a drug trafficking offense is life imprisonment,[5] with a minimum term of five years incarceration.  18 U.S.C. § 924(c)(1)(A)(i).  As a Class A felony, no more than five years of supervised release and a maximum fine of $250,000 may be imposed.  18 U.S.C. §§ 3559(a), 3571(b), 3583(b)(1).  A $100 special assessment must be imposed, 18 U.S.C. § 3013(a)(2), and probation is statutorily prohibited, 18 U.S.C. § 924(c)(1)(D)(i).

I next calculated the Guidelines range applicable to Perez's case utilizing the November 1, 2005 edition of the United States Sentencing Guidelines Manual ("U.S.S.G.").  U.S.S.G. § 1B1.11(a) (2005) (requiring use of the version in effect on the date of sentencing).  First, the three counts of conviction for drug possession were grouped because they involve substantially the same harm (i.e., drug offenses), and the offense level is determined largely on the quantity of substance involved.  U.S.S.G. § 3D1.2(d).  The firearms conviction was excluded from the grouping and calculation of the Guidelines because 18 U.S.C. § 924(c) mandates consecutive sentences.  U.S.S.G. §§ 3D1.1(b)(1), 5G1.2(a).

---

[5]Although § 924(c) is silent as to the maximum statutory sentence, courts have read the provision as setting life imprisonment as the maximum.  *See United States v. Sandoval*, 241 F.3d 549, 551 (7th Cir. 2001) (holding *Apprendi v. New Jersey*, 530 U.S. 466 (2000), inapplicable to a conviction under § 924(c)(1)(A) because the statute carries a maximum sentence of life imprisonment); *United States v. Pounds*, 230 F.3d 1317, 1319 (11th Cir. 2000) (same); *see also Harris v. United States*, 536 U.S. 545, 574 (2002) (Thomas, J., dissenting) (stating the statutory maximum of life imprisonment applies to any violation of § 924(c)(1)(A)).

The base offense level for a violation of 21 U.S.C. § 841(a) is set forth in U.S.S.G. § 2D1.1(a)(3) and the Drug Quantity Table in U.S.S.G. § 2D1.1(c). Where there are multiple drug types, the quantities of the different controlled substances must be combined. U.S.S.G. § 2D1.1 cmt. n.6. To combine different drug types, the Guidelines provide tables from which to convert each drug into its marijuana equivalents. U.S.S.G. § 2D1.1 cmt. n.10. The total of the marijuana equivalent amounts is then used to determine the combined base offense level using the Drug Quantity Table.

In this case, the jury unanimously agreed, by proof beyond a reasonable doubt, the amount of crack was five grams or more. The DEA regional laboratory examined the crack recovered and advised the net weight was 39.5 grams. The marijuana equivalent of the net weight is 790,000 grams or 790 kilograms. The jury also unanimously agreed, by proof beyond a reasonable doubt, the amount of cocaine was five hundred (500) grams or more. The DEA regional laboratory examined the cocaine recovered and advised the net weight was 990.5 grams. The marijuana equivalent of the net weight is 198,100 grams or 198.1 kilograms. While the jury unanimously agreed, by proof beyond a reasonable doubt, that Perez was guilty of possession with the intent to distribute marijuana, they did not make a finding as to the amount of marijuana. According to the PSIR, the DEA regional laboratory examined the marijuana recovered and advised the net weight was 275.6 grams.[6] The marijuana equivalent of the net

---

[6]A finding of the amount of marijuana by a preponderance of the evidence does not raise the Sixth Amendment concerns addressed in *Booker* because the Guidelines are only advisory in a post-*Booker* sentencing scheme. *Booker*, 543 U.S. at 259 (holding that, without the mandatory provision, "the statute falls outside the scope of *Apprendi*'s requirement" sentence enhancements be based solely on facts rendered by a jury or admitted by the defendant); *United States v. Crosby*, 397 F.3d 103, 112 (2d Cir. 2005) (holding "with the mandatory use of the Guidelines excised, the traditional authority of a sentencing judge to find all facts relevant to sentencing will encounter no Sixth Amendment objection"). Perez also raised no objections, in writing or at the sentencing hearing, to reliance on the DEA laboratory results to determine the marijuana quantity. Even with the marijuana amount excluded Perez would still face a sentence based on a combined drug quantity

weight is 275.6 grams or .2756 kilograms. The combined quantity of drugs is 988,375.6 grams or 988.3756 kilograms of marijuana. A base offense level of 30 applies where the quantity of marijuana is at least 700 kilograms but less than 1,000 kilograms.

Because no enhancements for specific offense characteristics or other adjustments applied in this case, I next determined the criminal history category applicable to Perez. According to the PSIR, Perez has six prior adult criminal convictions, the first five of which occurred in Georgia and the last in Pennsylvania.[7] His first adult conviction occurred on April 3, 1996, when he pled guilty to battery in state court in Atlanta, Georgia. He was sentenced to one year of probation and ordered to pay a $300 fine. Approximately eight months later, he was arrested for a probation violation, resulting in the continuation of the original order of probation. His second criminal conviction occurred on March 16, 1998, when he entered a nolo contendere plea to driving with a suspended or revoked license and was ordered to pay a $128 fine. On December 4, 1998, Perez pled guilty to theft by receiving stolen property and concealing the identity of a motor vehicle. He was sentenced to three years probation on both counts to run concurrently and ordered to pay a $500 fine. Perez pled guilty to conducting a financial transaction with a stolen credit card in November, 1998. Again, the Georgia state court imposed a sentence of two years probation. His fifth conviction occurred in December, 2002 when he pled guilty to reckless conduct, received a twelve-month probation sentence and was ordered to pay a $1,000 fine. His last conviction occurred on September 3, 2003, when he entered a guilty

equivalent to nearly 1,000 kilograms of marijuana.

[7]The Presentence Investigation Report identified one juvenile conviction for driving with a suspended license for which Perez pled nolo contendere. He received a sentence of twelve months confinement, which was suspended after serving only two days, and ordered to a pay a fine and court fees. No criminal history points applied to this offense because the sentence imposed did not meet the criteria set forth in § 4A1.2(d).

plea on charges of carrying a firearm without a license and on public streets or places.  The Philadelphia County Court of Common Pleas sentenced him to not less than six months but no more than twenty-three months imprisonment with credit for time served, three years probation, and to pay court costs.[8]

One criminal history point applies to each prior conviction for which a term of probation of at least one year or a term of imprisonment of at least thirty days was imposed.  U.S.S.G. § 4A1.2(c)(1).  Accordingly, his five convictions in Georgia resulted in four criminal history points.  Three criminal history points apply to Perez's Pennsylvania conviction because the sentence of imprisonment exceeded one year and one month.  U.S.S.G. § 4A1.1(a).  The Guidelines require two additional criminal history points apply when the defendant commits the instant offense while under any criminal justice sentence, including probation.  This provision applied to Perez's case because, at the time of the instant offense, he was on probation for the reckless conduct conviction.  Perez's criminal history resulted in a total of nine criminal history points, which placed him in a criminal history category of IV.

Based on the total offense level of 30 and a criminal history category of IV, the advisory Guidelines range for Perez was 135 months to 168 months imprisonment.  The firearm conviction, pursuant to 18 U.S.C. § 924(c)(1), required a five-year mandatory minimum term of imprisonment (sixty months) to run consecutively.[9]

---

[8]Perez was granted parole on June 8, 2004.

[9]At the sentencing hearing, I noted for the record a sixty-month minimum for the firearm charge if applied to the Guidelines range would raise the low-end of the Guidelines range to 195 months and the minimum for the high-end of the Guidelines range to 228 months.  This Court understands, however, the advisory Guidelines calculation cannot include the mandatory consecutive sentence for the firearms charge.

The Guidelines also place limits on other non-incarceration types of sentences in Perez's case. Specifically, I found the authorized term for supervised release was at least three years but not more than five years for a Class B felony (i.e., the cocaine and crack convictions), and at least two years but not more than three years for a Class D felony (i.e., the marijuana conviction). U.S.S.G. § 5D1.2(a)(1), (2). Supervised release is required if the Court imposes a term of imprisonment of more than one year or when required by statute. U.S.S.G. § 5D1.1. Perez also was ineligible for probation because his drug convictions are Class B felonies, 18 U.S.C. § 841(b)(1)(B) precludes probation, and the minimum Guidelines range of 135 months placed him in Zone D of the Sentencing Table. U.S.S.G. § 5B1.1(b)(1)-(2), cmt. n.2. The fine range for the instant offenses was from $17,500 to $4,00,000, U.S.S.G. §§ 2K2.4 cmt. n.7, 5E1.2(c)(3)-(4), and restitution was not an issue because there was no financial loss to a victim, U.S.S.G. § 5E1.1(a).

Neither the Government nor Perez requested a departure and the Court did not find a basis for a departure. Therefore, I next turned to the third step in the sentencing framework to balance the factors set forth in 18 U.S.C. § 3553(a) to yield a reasonable sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a).[10] The instant offense involved the possession of over 1,000 grams of three different controlled substances, which is not a small indiscretion in the eyes of the law. This heavy trafficking quantity of drugs did not, but could have, ended up in the community if not for the intervention, albeit incidental, of the Philadelphia police. The presence of weapons further endangered society because of the violence potential generally associated with gun possession. I specially noted multiple weapons were found and attributed to Perez – an unloaded weapon and a loaded weapon with an obliterated serial number

---

[10]The factors found in 18 U.S.C. §§ 3553(a)(3), (5) and (7) had no bearing on the disposition of this case and will not be discussed.

– despite indictment for only one count of a § 924 violation.  The Guidelines calculation did not permit a method by which to account for the possession of multiple guns and the obliteration of the serial number on one of the guns.  The statutorily mandated consecutive sentence for the § 924(c) conviction adequately addressed the possession of the weapons in furtherance of a drug trafficking crime, but a reasonable sentence needed to reflect these two additional aggravating factors.  I found a sentence of eighty-five months – two years more than the statutory minimum – sufficiently achieved this purpose.

The record before the Court also contained significant, negative evidence about the defendant's character and gave no indication he was ready to renounce his criminal activity and conform his behavior to societal norms and expectations.  At the age of twenty-eight years, Perez has a long history of committing criminal offenses since he was juvenile.  The instant offense was his seventh conviction in two states.  Despite multiple probationary and monetary sentences from the Georgia state courts, Perez continued his illegal behavior but changed the community subject to his illegal conduct.  In 2002, at the age of twenty-four years, he was arrested for the first time in Philadelphia, and after years of trouble with the law was sentenced to prison time but not a lengthy period.  The discipline of a corrective institution for a significant period of time is necessary given the ineffectiveness of Perez's prior sentences and his apparent inclination against conforming his behavior to the law.

A substantial sentence is further justified in Perez's case based on the timing of his current offenses.  The police located the drugs and weapons in the trunk of the car in April, 2003.  This was after Mr. Perez was arrested for firearm possession and while he was awaiting trial on this charge in Philadelphia state court.  A fair reading of Perez's criminal history establishes he continued to engage in illegal conduct, both drug trafficking and weapons

possession, despite pending criminal prosecution for weapon charges.  Perez also has pending charges on two Philadelphia County criminal complaints for various violent crimes, including aggravated assault, attempted murder, firearms possession, reckless endangerment, and criminal conspiracy.  Although these charges could not be considered in the calculation of the sentencing Guidelines, these charges, along with his prior convictions and current offenses, evidence a pattern of violence and gun possession that raises significant concern of recidivism and for the public's safety.

A substantial term of imprisonment sufficiently would deter Perez from any future criminal conduct, protect the public, and act as a general deterrent on others engaged in similar illegal behavior.  A lengthy sentence also is essential to promote respect for the law generally, but more importantly to ensure Perez understands his need to respect the law.  A sentence of twenty-one years – 168 months for the crack and cocaine convictions (the high end of the Guidelines range), a concurrent sentence of sixty months on the marijuana conviction (the maximum term permitted by statute), and a consecutive sentence of 84 months for the weapons charge – reasonably and sufficiently addresses these sentencing concerns.

After a thorough review of Perez's personal history, I find nothing remarkable about his history to support a lower sentence.  He reportedly had a good home life as a child despite his parents divorcing when he was twelve years old.  His father's former position as a police officer in Dade County, Florida did not have a positive impact on Perez given his early start into the criminal life.  Perez has never been married, has no children, and his last girlfriend testified against him at trial.  He has no significant medical history or history of ongoing medical problems to factor into a reasonable sentence.  Perez may have some minimum rehabilitation needs, but none so significant to justify a lighter sentence.  Specifically, while he has no

significant history of substance abuse or mental health problems, according to the PSIR, he informed Philadelphia County Adult Probation and Parole Office he occasionally used marijuana.  No evidence indicates this use, however, rises to the level where he requires treatment.  Perez also reportedly never finished high school but received his GED, although that fact could not be verified by the probation office.  He has held jobs in the past as a valet, promoter and manager of a club, but those positions did not provide a strong incentive for him to refrain from engaging in criminal behavior.  He certainly could benefit from vocational training to permit him the greatest chance for success upon completion of the sentence I imposed, but I find the Bureau of Prisons is best suited to help Mr. Perez with these few rehabilitation efforts while simultaneously keeping a careful watch on him until he is 49 years old.

Perez raised one sentencing argument concerning disparity and asked the Court to grant credit for time served and to place him at a federal institution in a specific region of the country. I find the disparity issue lacks merit and his requests fall outside my judicial power.

First, defense counsel contends the sentencing differential between crack cocaine and powder cocaine, commonly referred to as the 100-to-1 ratio, creates negatively and unfairly skewed sentences when crack is involved.[11]  It is undisputed the Guidelines treat possession of five grams of crack the same as they treat possession of 500 grams of powder cocaine.  As a result, it takes 100 times more cocaine powder as crack to trigger the same penalties.[12]  In the

---

[11]Although *Cooper* makes clear a district court need not address meritless sentencing arguments, the crack cocaine and powder cocaine disparity is an issue of first impression in the Third Circuit.  Careful consideration therefore is warranted.

[12]The Anti-Drug Abuse Act of 1985 created the mandatory minimum penalty scheme applicable to drug trafficking violations, including cocaine offenses, and first introduced the 100-to-1 ratio. Pub. L. No. 99-570, 100 Stat. 3207 (1986).  The Act set a ten-year mandatory minimum for five grams of crack, but required 100 times greater quantity of cocaine powder for the same penalty. *See* 21 U.S.C. § 841(b).  The Sentencing Commission extended the sentencing disparity to the Guidelines in 1987 by setting the same base offense level for five grams of crack and 500 grams of

past ten years, the Sentencing Commission has made three unsuccessful attempts to have Congress modify the 100-to-1 ratio.[13]  Despite congressional reluctance to adopt a less severe ratio, post-*Booker* district courts have acknowledged the disparity between sentences imposed for equivalent amounts of crack versus powder cocaine and accepted this argument to impose a non-Guidelines sentence.  *See, e.g., United States v. Perry*, 389 F. Supp. 2d 278, 307 (D.R.I. 2005) (altering Guidelines range consistent with 20-to-1 ratio); *United States v. Leroy*, 373 F. Supp. 2d 887, 897 (E.D. Wis. 2005) (same); *United States v. Beamon*, 373 F. Supp. 2d 878, 887 (E.D. Wis. 2005) (same); *Simon v. United States*, 361 F. Supp. 2d 35, 48-49 (E.D.N.Y. 2005) (same result with 20-to-1 or 10-to-1 ratio); *United States v. Smith*, 359 F. Supp. 2d 771, 782 (E.D. Wis. 2005) (same).  *But see United States v. Tabor*, 365 F. Supp. 2d 1052, 1061 (D. Neb. 2005) (finding only Congress can alter crack-to-powder cocaine ratio).

---

cocaine powder.  *United States v. Smith*, 359 F. Supp. 2d 771, 778-79 (E.D. Wis. 2005).

[13]In light of concerns about the 100-to-1 ratio, namely that "crack cocaine and powder cocaine are two forms of the same drug and African-Americans tended to be prosecuted more frequently than whites for crack-crime," *United States v. Tabor*, 365 F. Supp. 2d 1052, 1057, Congress directed the Sentencing Commission examine the issue.  Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 280006, 108 Stat. 297 (1994).  In 1995, the Commission unanimously rejected the 100-to-1 ratio as unjustifiable, and by a 4-to-3 vote, offered a proposed amendment to the Guidelines enacting a 1-to-1 ratio.  Congress rejected the proposal, but directed the Commission to present other recommendations.  *United States v. Perry*, 389 F. Supp. 2d 278, 301 (D.R.I. 2005).  In 1997, the Commission offered a 5-to-1 ratio on which Congress took no action.  *Id.*  In 2002, the Commission offered a new report reiterating its concerns the 100-to-1 ratio lacked reliable penological or scientific justification and urging Congress to adopt a less severe ratio of 20-to-1.  The findings from the 2002 report commonly cited to support a lower ratio include: (1) crack cocaine tends to involve low-level offenders (i.e., those with the lowest quantity of drugs and the least criminal history); (2) minorities are disproportionately persecuted for a crack offense; (3) no substantial difference exists between the prevalence of aggravated conduct in crack cases relative to cocaine powder cases; and (4) no pharmacological difference exists between the two types of cocaine.  *Id.*; *Smith*, 359 F. Supp. 2d at 778-80.  Despite these findings, Congress has yet to act on the Commission's most recent proposal.

These cases reject the 100-to-1 ratio without considering how the disparity fairs in light of the defendant's individual characteristics.  For instance, in *Perry*, the district court expressly found the disparity was "the core of all of the issues involved in the sentencing" and nearly halved the low end of the advisory Guidelines range based solely on a 20-to-1 ratio.  Even in cases where the courts consider other sentencing factors, the sentencing disparity controlled over mixed or negative evidence balancing against a substantial alteration in the advisory Guidelines range.  *See, e.g., Leroy*, 373 F. Supp. 2d at 890-91 (altering advisory Guidelines range despite the defendant posing a danger risk to the public, a serious criminal history, unstable employment history, and prior drug problem); *Beamon*, 373 F. Supp. 2d at 886-87 (applying 20-to-1 ratio, despite "a somewhat mixed picture" of defendant's characteristics, risk of recidivism, and other § 3553(a)(2) concerns, partially because the sentencing judge had used that ratio previously).

This Court's interpretation of the post-*Booker* district court opinions is consistent with the only published Circuit Court decision addressing impact of the crack and powder cocaine disparity on post-*Booker* sentencing.  In *United States v. Pho*, 433 F.3d 53, 64 (1st Cir. 2006), which involved two companion cases, the First Circuit rejected the lower court's alteration of the 100-to-1 ratio partially because, "although the district court considered individualized factors in each case, it did not base its sentencing decisions on those factors. . . . [T]he 'only thing' that supported reduced sentences for the defendants was the 'tragic' and 'incongruous' treatment of crack cocaine offenses in the sentencing guidelines and the underlying statutory scheme."  This categorical rejection, according to the *Pho* court, amounted to an error of law because "sentencing decisions must be done case by case and must be grounded in case-specific considerations, not in general disagreement with broad-based policies enunciated by Congress or the Commission, as its agent."  *Id.* at 65.

While I find this aspect of the *Pho* decision persuasive, the decision creates tension with the § 3553(a)(6) factor by initially holding a district court can never consider a crack-powder cocaine ratio other than the 100-to-1 ratio because only Congress can choose a different ratio. A sentencing judge cannot completely ignore the 100-to-1 ratio because the advisory Guidelines range, which remains relevant under a § 3553(a) analysis, and the statutory minimum and mandatory sentences reflect Congress' preferred ratio. And while uniformity is certainly threatened by courts considering various crack-powder cocaine ratios, some level of non-uniformity is bound to arise when a judge has discretion in sentencing.

Whether this Court finds the crack and powder cocaine disparity sufficient to justify applying a different ratio in sentencing, however, need not be decided to determine Perez's sentence. Even if I assume § 3553(a)(6) permits me to consider the crack-cocaine powder disparity, the language of the sentencing factor is clear: the examination of an unwarranted disparity cannot be done in a vacuum. Rather, the statute states a reasonable sentence should consider "the need to avoid *unwarranted* sentence disparities *among defendants with similar records who have been found guilty of similar conduct*." 18 U.S.C. § 3553(a)(6) (emphasis added). A court must consider each offender and each offense individually to determine if the disparity amounts to an unwarranted one when crafting a reasonable sentence. For instance, in *United States v. Fisher*, the sentencing judge expressly found the difference between the advisory Guidelines range based on crack cocaine and a sentence treating the same drug as powder cocaine was fourteen years at the low end of the range. No. 03-cr-1501, 2005 U.S. Dist. LEXIS 23184, at *34 (S.D.N.Y. 2005) (finding Guidelines range based on crack with low end of 235 months, whereas treating the crack as powder cocaine corresponded to 63 to 78 months). In that instance, the length of the disparity could not be so easily overlooked by the court and, in

16

crafting a reasonable sentence in light of all the 3553(a) factors, the court applied a lower ratio to reflect the unwarranted disparity.  *Id.* at *34-35.

This Court does not find an unwarranted disparity exists in Perez's case sufficient to justify a lower sentence.  First, this is not a case of a small-time drug dealer arrested only for crack cocaine.  Perez is an admitted drug trafficker.  According to the PSIR, after his arrest on the instant offenses, Perez made a proffer during which he declared he was a drug trafficker who received ten to twenty kilograms of cocaine per week, for approximately a six-month period.  That means, Perez, by his own admission, caused nearly 500 kilograms of cocaine to enter the community or created an opportunity for the drugs to enter the community.  Nor is Mr. Perez a discriminating drug trafficker – he was arrested and found guilty by a jury for the possession of three different controlled substances.

Second, the length of disparity courts have found troublesome does not exist in Perez's case.  No ten- or fourteen-year sentence difference arises largely because this case does not solely involve crack cocaine.  Under a 20-to-1 ratio, which most district courts utilize, the difference in the resulting Guidelines range is minor because Perez was convicted of possession of 990.5 grams of cocaine.  If you treat the crack cocaine amount with the altered ratio and merely add that amount to the 990.5 grams, the resulting 142.44 kilograms of cocaine converts to 356.1 kilograms of marijuana.  At best, the disparity equates to a four-level drop in the offense level to 26, and the resulting three- to four-year difference in sentencing is insubstantial relative to those variances other courts have found troubling.  All the evidence in this case points to the advisory Guidelines range resulting in 135 months to 168 months because of Perez's conduct, not a disparity – Perez chose to be a drug trafficker, he chose to possess a significant amount of multiple controlled substances, he was found guilty by a jury of possessing all three drugs, and

17

together those amounts led to his Guidelines sentence.  I find the sentence I imposed, utilizing the advisory Guidelines range reflecting the 100-to-1 ratio, does not differ substantially from a sentence calculated with a lower ratio of crack cocaine to powder cocaine as to amount to an unwarranted disparity.

Perez also requested that any sentence imposed include credit for time he served while incarcerated on his state charge because he could not execute on the bail granted due to a detainer on the federal charges.  Defense counsel cited U.S.S.G. § 5G1.3 as a source for this Court's authority to give credit for time served.  This provision, however, grants the Court authority only to impose a federal sentence to run concurrently, partially concurrently, or consecutively to an undischarged term of imprisonment.  It does not relate to the granting of credit for time served.  Rather, 18 U.S.C. § 3585(b) governs this issue and extends to an offender the right to have certain jail-time credit.  But according to the Supreme Court in *United States v. Wilson*, 503 U.S. 329 (1992), the duty to compute and ultimately grant the time served rests with the Attorney General, through the Bureau of Prisons.  Therefore, I have no authority to grant or calculate any credit for time served when determining Perez's sentence, and any arguments as to this point must be directed to the Bureau of Prisons.

Perez's second request was placement at an institution in the Northeast region of the United States.  Again, the Bureau of Prisons, not the court, has the power to designate the place of a defendant's imprisonment.  18 U.S.C. § 3621(b).  Therefore, I offered the Defendant's request as a recommendation, but recognized the final decision rested with the Bureau of Prisons.

For all these reasons, and for the reasons stated on the record at the sentencing hearing, a sentence of a total of 252 months imprisonment is just and meets the statutory purposes of sentencing set forth in 18 U.S.C. § 3553(a).

BY THE COURT

_____/s/ Juan R. Sánchez, J._____
Juan R. Sánchez, J.