IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATE OF AMERICA | : | CIVIL No. 08-2945 |
| | : | |
| v. | : | CRIMINAL No. 03-554 |
| | : | |
| CARLOS MANUEL PEREZ | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                       **July 11, 2011**

      Petitioner Carlos Manuel Perez asks this Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Perez also seeks an evidentiary hearing, arguing he received ineffective assistance of counsel at trial, sentencing, and on appeal, in violation of his Sixth Amendment rights. For the following reasons, his petition will be granted in part and denied in part.

**FACTS**

      On April 14, 2003, an assailant fired shots at Philadelphia 76ers basketball player Allen Iverson and a number of his companions outside a Philadelphia nightclub. After investigation, the Philadelphia police identified Perez as a suspect, and obtained a search warrant for his residence. On April 24, 2003, Philadelphia police officers executed the warrant at an apartment Perez shared with his girlfriend, Bobbi Compton. Compton was the only person present during the search because Perez had fled the state after the shooting. Compton gave the officers written consent to search two vehicles parked at the residence: a 2002 Mercedes-Benz and a 1995 green Pontiac Grand Am.[1]

      Nothing was recovered from the search of the Mercedes. However, officers recovered a

---

[1] Although both vehicles were registered in Compton's name, Compton informed the officers she drove the Mercedes-Benz and Perez drove the Pontiac. She further explained the Pontiac was registered in her name because Perez did not have a valid driver's license.

duffel bag from the trunk of the Pontiac containing (1) 39.5 grams of cocaine base ("crack"), (2) 990.5 grams of cocaine, (3) 275.6 grams of marijuana, (4) a loaded revolver with an obliterated serial number; and (5) an unloaded semiautomatic handgun. Perez's Pennsylvania identification card and his passport were also in the trunk. Although both Perez and Compton had access to the Pontiac, the police officers concluded the items in the Pontiac belonged to Perez.

In May 2003, Perez returned to Pennsylvania and surrendered to the police. While in custody, Perez signed a proffer letter admitting he owned the contraband found in the Pontiac. On August 28, 2003, a four-count indictment was issued charging Perez with possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(d); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1).

Before trial, Perez moved to suppress the physical evidence uncovered in the Pontiac. This Court denied his motion, finding the search of the car did not exceed the scope of the search warrant, and holding Compton had authority to consent to the search of the Pontiac.[2] Perez's first trial resulted in a mistrial after the jury could not reach a unanimous verdict. Following a second trial, Perez was convicted on all four counts. Perez did not testify at either trial. Defense witness Kimberly Mastrianni, Compton's mother, testified at the first trial, but was not called as a witness at the second trial.[3] On February 17, 2006, Perez was sentenced to 252 months of imprisonment.

---

[2] Perez did not seek to suppress evidence obtained from the search of the residence, including a bulletproof vest found with a number of sports jerseys in Perez's bedroom closet.

[3] At Perez's first trial, Mastrianni testified she advised her daughter not to allow Perez access to the Mercedes-Benz because he would let other people use it.

This sentence consisted of a sentence of 168 months of imprisonment on the crack, marijuana, and cocaine convictions–a sentence at the high end of the Guidelines range–and a sentence of 84 months on the firearms charge, to be served consecutive to the 168-month sentence. *See United States v. Perez*, Crim. No. 03-554, Document 85 at 12 (E.D. Pa. Mar. 9, 2006). Both Perez's conviction and sentence were affirmed on appeal. *United States v. Perez*, 246 F. App'x 140 (3d Cir. 2007). On June 24, 2008, Perez filed a petition for relief from his sentence pursuant to 28 U.S.C. § 2255, claiming he received ineffective assistance of counsel during his trial, sentencing, and appeal.[4]

**DISCUSSION**

Pursuant to § 2255, a prisoner in custody may seek to have his sentence vacated, set aside, or corrected if it was imposed in violation of the Constitution or laws of the United States, or is otherwise subject to collateral attack. *Id.* Such relief may be granted only if an error of law or fact occurred, and if such error constituted "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Eakman*, 378 F.3d 294, 298 (3d Cir. 2004) (citation omitted). In general, claims not raised on direct appeal may not be raised on collateral review, but claims of ineffective assistance of counsel can be raised for the first time in a § 2255 petition. *Massaro v. United States*, 538 U.S. 500, 503-04 (2003).

To establish his counsel was ineffective, a petitioner must (1) show his attorney's performance was deficient and (2) demonstrate such deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Palmer v. Hendricks*, 592 F.3d 386, 394 (3d Cir. 2010). "The first prong requires a petitioner to demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed [to] the defendant by the Sixth Amendment." *Id.*

---

[4] Perez was represented by different counsel at each of these three proceedings.

(citation and internal quotation marks omitted). To meet this prong, counsel's actions must fall below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687 ("The proper measure of attorney performance is reasonableness under prevailing professional norms."). The second prong requires the petitioner to demonstrate the "errors were sufficiently serious as to deprive the defendant of a fair trial" with a reliable result. *Id.* To prove prejudice, the petitioner must show that "but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694). The burden is on the petitioner to establish both prongs of the *Strickland* test. *Id.* at 693 ("Even if a defendant shows that particular errors of counsel were unreasonable . . . the defendant must show that they actually had an adverse effect on [his] defense.").[5]

In his § 2255 petition, Perez raises six instances of alleged ineffective assistance of counsel.[6] Perez argues (1) his sentencing attorney was ineffective for failing to consult with Perez regarding Perez's Presentence Investigation Report (PSR); and his trial counsel was ineffective for (2) refusing to allow Perez to testify, (3) failing to investigate or pursue a self-protection defense in regard to Perez's firearm charges, (4) failing to call Mastrianni to testify during the second trial, and (5) failing to seek suppression of the physical evidence obtained during the search of Perez's residence; and (6)

---

[5] There are only "two categories of ineffective assistance claims in which prejudice may be presumed: cases of actual or constructive denial of the assistance of counsel altogether and cases in which counsel is burdened by an actual conflict of interest." *Palmer*, 592 F.3d at 398 (quoting *Strickland*, 466 U.S. at 692) (punctuation and internal quotation marks omitted). If a claim does not fall into the these two categories, ineffectiveness claims "are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland*, 466 U.S. at 693.

[6] After this Court appointed counsel to represent Perez in connection with his § 2255 petition, his attorney refined and narrowed two issues briefed by Perez and incorporated the remaining issues in his pro se brief by reference.

his appellate counsel was ineffective for failing to raise these five issues on appeal.

Perez first contends his sentencing counsel was ineffective by failing to consult with him regarding the PSR, and by failing to object to the erroneous assessment of three criminal history points in the PSR. The PSR assessed Perez nine criminal history points. Seven of Perez's criminal history points were assessed for four criminal convictions he had incurred in Georgia between 1996 and 2002, including a 2002 conviction for reckless conduct, and for one conviction he incurred in Pennsylvania in 2003. Perez was assessed one criminal history point for the 2002 Georgia reckless conduct conviction and, because the probation officer believed Perez was on probation for this conviction at the time he committed the instant offense, an additional two points were added to his criminal history score. Perez, however, was not sentenced to probation for the reckless conduct conviction. Thus, he should not have been assessed any criminal history points for this conviction, and should not have been assessed the additional two criminal history points. Despite Perez's assertion that he was not placed on probation for this conviction, his sentencing counsel advised this Court that he had no objection to anything in the PSR.

The Government concedes the attorney who represented Perez at sentencing should have investigated Perez's claim that a mistake had been made in his PSR. "[W]here defense counsel fails to object to an improper enhancement under the Sentencing Guidelines, counsel has rendered ineffective assistance." *Jansen v. United States*, 369 F.3d 237, 244 (3d Cir. 2004). Such ineffective assistance necessitates resentencing if the error harmed the defendant's substantial rights, i.e. the error was prejudicial and affected the outcome of the defendant's judicial proceedings. *Stevens*, 223 F.3d at 242-44. "[A]ny amount of actual jail time has Sixth Amendment significance" and can constitute prejudice to a defendant. *Glover v. United States*, 531 U.S. 198, 203 (2001) (holding an

increase in the Guideline range of 6 to 21 months caused by an error in the PSR calculation to which defense counsel did not object could be significant enough to constitute prejudice under *Strickland*); *see also United States v. Otero*, 502 F.3d 331, 3337 (3d Cir. 2007) (holding "[t]he prejudice prong is satisfied 'when a deficiency by counsel resulted in a specific, demonstrable enhancement in sentencing . . . which would not have occurred but for counsel's error" and quoting *United States v. Franks*, 230 F.3d 811, 815 (5th Cir. 2000), in which the court held a sentence which was increased by at least three months based on an erroneously applied sentencing enhancement constituted prejudice); *United States v. Diaz*, No. 92-078-02, 1997 U.S. Dist. LEXIS 4783, at *16 (E.D. Pa. Apr. 14, 1997) ("Defense counsel's failure to raise clearly meritorious issues concerning a client's offense level or criminal history assessment constitutes ineffective assistance when the deficiency results in the court imposing sentence beyond the appropriate guideline range.").

Here, if the erroneous three criminal history points had not been assessed, Perez would have had six criminal history points, placing him in Criminal History Category III instead of IV. This change would have reduced his Guidelines sentencing range of 135 to 168 months to 121 to 151 months. This Court sentenced Perez to 168 months of incarceration–a sentence at the top of the improperly calculated Guidelines range–for his narcotics offenses. Although the Guidelines are advisory, if Perez's Guidelines range had been lower, he might have been sentenced to 151 months, the top of the correctly calculated Guidelines range, on these offenses. Thus, because Perez's PSR included a plain error which may have enhanced his sentence by 17 months, this Court will grant Perez's § 2255 petition as it applies to this claim for relief, and will reopen the sentencing hearing.

Perez next asserts his trial counsel was constitutionally deficient in a number of ways. He first alleges his counsel violated Perez's constitutional rights by refusing his request to testify, and

he seeks an evidentiary hearing to develop the record on his issue. A defendant has a constitutional right to testify in his own defense, which cannot be taken away by counsel. *See Rock v. Arkansas*, 483 U.S. 44, 51 (1987); *United States v. Batista*, 483 F.3d 193, 197 (3d Cir. 2007). When a habeas petitioner claims his counsel was ineffective by denying his right to testify, the two-part *Strickland* test applies. *Palmer v. Hendricks*, 592 F.3d 386, 394 (3d Cir. 2010). Before determining whether Perez's trial counsel's performance was deficient, this Court will determine whether Perez has shown he was prejudiced by not being able to testify on his own behalf. *See Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered.").

Perez argues, if permitted to testify, he would have admitted to ownership of the narcotics and firearms found in the trunk of his car. However, he would have stated he did not own the guns to facilitate his drug trafficking, but rather kept them for protection. He would have further testified he did not keep these firearms on his person, but stored them, with his narcotics, in the trunk of his car "because [he] was on the run, seeking to avoid capture, and [he] did not want any contraband found inside the house, should the police search [his] premises while [he] was out of town." Perez Aff. ¶ 3. Perez asserts his trial counsel "would not allow [him] to testify" because counsel told him if he testified, the Government would introduce Rule 404(b) evidence of his prior crimes, wrongs, or acts, including the shooting involving Allen Iverson. Perez contends that, had he testified, despite the risk the Government would introduce unfavorable evidence against him, he would have been acquitted on the charge of possession of a firearm in furtherance of a drug trafficking offense and would have avoided the mandatory minimum five year consecutive sentence for that offense.

Perez has not shown a reasonable probability that, if he had testified, such testimony would

7

have exculpated him of the offense of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). To sustain a conviction under § 924(c), the Government was required to show that Perez "during and in relation to any . . . drug trafficking crime . . . use[d] or carrie[d] a firearm," or "in furtherance of any such crime possesse[d] a firearm." Under this statute, "[w]hile using or carrying a firearm may be grounds for conviction, possession in furtherance of a drug trafficking crime may also suffice." *Perez*, 246 F. App'x at 148. To prove a firearm was possessed in furtherance of a drug trafficking crime, "the evidence must demonstrate that possession of the firearm advanced or helped forward a drug trafficking crime." *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004) (citation omitted). Although the "mere presence" of a firearm along with narcotics is insufficient to prove such firearm was possessed in furtherance of a drug trafficking offense, *id.*, immediate proximity to drugs "is sufficient evidence for a rational juror to conclude the gun was [possessed] to further drug trafficking." *See United States v. Basley*, 357 F. App'x 455, 462 (3d Cir. 2009) (citing *United States v. Iglesias*, 535 F.3d 150, 157 (3d Cir. 2008)). Indeed, a firearm's immediate proximity to drugs is sufficient to support a § 924(c) conviction even if the defendant provides an affirmative explanation for his possession of the firearm. *See United States v. Ramirez*, 249 F. App'x 277, 280 (3d Cir. 2007) (affirming a defendant's § 924(c) conviction based on the proximity of the firearm found in the defendant's home to drug trafficking paraphernalia, and despite the defendant's assertion he owned the handguns for self-protection and sporting purposes).

Here, the police found two firearms in a duffel bag which also contained crack, cocaine, and marijuana. This proximity is sufficient evidence to allow a reasonable jury to conclude Perez possessed the firearms in furtherance of his drug trafficking, irrespective of any testimony by Perez

regarding the reason for his possession. *See Iglesias*, 525 F.3d at 157 ("Given the proximity of the loaded magazine to the gun, and considering that the gun, magazine, and drug packaging paraphernalia all were stored together in the briefcase that was found in the same room as methamphetamine, a rational juror easily could have concluded that the gun was used in furtherance of [defendant's] drug-trafficking." (punctuation and internal quotation marks omitted)). Moreover, had Perez testified, as his counsel correctly informed him, he would have been subject to impeachment with evidence of his prior bad acts. Thus, Perez has failed to demonstrate he was prejudiced by his inability to testify because he has not shown there is a reasonable probability that the jury would have accepted his self-protection defense, especially where the guns–one of which had an illegally obliterated serial number– were not stored on his person, but were kept in a duffle bag full of drugs in the locked trunk of his car.[7] For the same reason, Perez also was not prejudiced by his counsel's decision not to investigate Perez's self-protection defense.[8]

---

[7] Because Perez failed to show prejudice, there is no need for this Court to order an evidentiary hearing regarding whether Perez's counsel prevented him from testifying. Moreover, there is no evidence in the record to corroborate Perez's claim he was denied the right to testify. Perez did not at any time tell the trial court he desired to testify or that his attorney was actively preventing him from testifying during his first or second trial, and he did not testify at either trial. A defendant's "bare bones assertion" that he was denied his right to testify is insufficient to require a hearing. *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991); *see also D'Amario v. United States*, 403 F. Supp. 2d 361, 371 (D.N.J. 2005) (same). More specific evidence is required. *Underwood*, 939 F.2d at 476 (noting "some substantiation [of the defendant's claim] is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify").

[8] In considering Perez's appeal, the Third Circuit addressed the proximity of the firearms to the drugs, and stated the proximity between the two supported a conviction of possession in furtherance of a drug trafficking crime. *Perez*, 246 F.App'x at 148. The court compared Perez's case to *Sparrow*, a case where the firearm "was placed so that it would be immediately available for Sparrow's protection whenever he retrieved drugs" where they were stored. *Id.* (quoting *Sparrow*, 371 F.3d at 853). The court held, based on this proximity, "the evidence was sufficient for a rational trier of fact to conclude that Perez possessed a firearm in furtherance of a crime of violence or a drug trafficking crime." *Id.*

Next, Perez contends counsel was ineffective due to his failure to call Mastrianni during Perez's second trial. During the first trial, Mastrianni testified she told Compton not to let Perez drive Compton's Mercedes because he would allow others to drive the car. Perez believes this testimony supports his defense because it reveals he allowed other people access to his car and therefore casts doubt on his ownership of the drugs and guns. Mastrianni's testimony, however, is not probative of Perez's ownership of the contraband found in the Pontiac because her testimony concerned only Compton's car, the Mercedes. Perez has not shown he was prejudiced by his attorney's decision not to re-call Mastrianni.

Perez also argues counsel was ineffective for failing to move to suppress evidence seized during the search of his residence, because he asserts the search warrant was unconstitutionally overbroad and general.[9] Perez alleges the search warrant for his residence gave police officers the authority to seize only handguns, ammunition, a sports jersey, and proof of his residency, and asserts the officers went beyond the scope of the warrant by seizing drugs, marijuana, clothing, cash, firearms, and other documents, which were not specifically mentioned in the warrant. Perez also fails to differentiate the evidence seized from his house and the evidence seized from his car, and has again failed to show he was prejudiced by his counsel's decision not to seek suppression of the items seized in his residence. His firearms and narcotics convictions are supported by the crack, cocaine, marijuana, and firearms which were found in his car. Importantly, Compton gave police

---

[9] "The Fourth Amendment seeks to prevent general warrants by requiring all warrants to contain a particular description of the things to be seized." *United States v. Christine*, 687 F.2d 749, 752 (3d Cir. 1982) (internal quotation marks omitted). A warrant is too general if it gives the searching officers "unbridled discretion to conduct an exploratory rummaging" through a defendant's belongings. *United States v. Leveto*, 540 F.3d 200, 211 (3d Cir. 2008) (quoting *Christine*, 687 F.2d at 753).

officers express permission to search the car, and the search of the Pontiac was thus not limited to the items listed on the warrant for the residence. Perez has not shown his counsel's failure to challenge the breadth of the search warrant constituted ineffective assistance of counsel. Furthermore, a successful motion to suppress would not have changed the outcome of Perez's trial because the Government's case was primarily based on the evidence seized from the Pontiac.

Finally, Perez contends his appellate counsel was ineffective for failing to raise these arguments on appeal. The *Strickland* test applies to claims of ineffective assistance of appellate counsel. *See United States v. Mannino*, 212 F.3d 835, 840 n.4 (3d Cir. 2000) ("Although the *Strickland* test was initially formulated in the context of trial counsel's stewardship, it applies with equal force to our analysis of the defendant['s] challenge to the performance of appellate counsel."). Here, because Perez's claims failed to meet the *Strickland* standard, his appellate counsel was not ineffective for choosing not to raise them.

Accordingly, Perez's § 2255 petition is granted in part and denied in part. An appropriate order follows.