IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 03-554 |
| | : | |
| CARLOS MANUEL PEREZ | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                                                   **January 3, 2025**

      Carlos Perez is currently serving a 54-month sentence for violating the terms of his supervised release. The revocation sentence was imposed upon the recommendation of both parties in April 2023 after Perez agreed not to contest the violations charged, including the charge that he committed murder by stabbing a man during a bar fight in 2016. Almost immediately after he began serving his revocation sentence, Perez filed a motion for a sentence reduction, which he has since supplement numerous times. Perez seeks a sentence reduction under Section 404(b) of the First Step Act. He also seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). The Government opposes any sentence reduction. While Perez is eligible to seek a reduced sentence under Section 404(b), the Court is not persuaded a reduction is warranted under that provision. In addition, Perez has not shown extraordinary and compelling reasons that would justify compassionate release. Perez's motions will therefore be denied.

**BACKGROUND**

      In August 2003, Perez was charged by indictment with one count of possessing with intent to distribute more than five grams of cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B); one count of possessing with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B); one count of possessing with intent to distribute

marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D); and one count of possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1).  ECF No. 2.

The case proceeded to trial in June 2005, but when the jury could not reach a unanimous verdict, the Court declared a mistrial.  ECF No. 42.  Perez was ultimately convicted of all counts following a retrial in October 2005.  He was later sentenced to a total of 252 months, consisting of 168 months on each of the crack and cocaine counts, to run concurrently; 60 months on the marijuana count, also to run concurrently; and 84 months on the § 924(c) count, to run consecutively to the sentences imposed on the remaining counts.[1]  ECF No. 78.  Perez was also sentenced to a total of five years of supervised release, consisting of concurrent terms of three years on the marijuana count and five years on the crack, cocaine, and § 924(c) counts.  *Id.*

In July 2011, the Court granted in part Perez's motion to vacate sentence under 28 U.S.C. § 2255 and ordered that Perez's sentencing hearing be reopened.[2]  ECF No. 127.  The Court then resentenced Perez to a total of 176 months, consisting of 92 months on the crack and cocaine counts, to run concurrently; 60 months on the marijuana count, also to run concurrently; and 84 months on the § 924(c) count, to run consecutively.[3]  ECF No. 133.  The Court also reimposed the

---

[1] Perez's advisory guidelines range at the time of sentencing was 135-168 months based on an offense level of 30 and a criminal history category of IV.  He was also subject to a mandatory minimum consecutive sentence of 60 months on the § 924(c) count.

[2] The Court found Perez received ineffective assistance of counsel at sentencing because his lawyer failed to investigate Perez's meritorious claim that the Presentence Investigation Report had improperly assigned him three criminal history points for a 2002 reckless conduct conviction in Georgia.  ECF No. 126 at 5-6.  This error increased Perez's advisory sentencing guidelines range at the time of his original sentencing from 121-151 months (based on a criminal history category of III) to 135-168 months (based on a criminal history category of IV).  *Id.* at 6.

[3] Although the reason for the resentencing was the error in Perez's criminal history calculation, his criminal history category at the time of resentencing ended up being the same as it was at his original sentencing (category IV) because an intervening conviction had become final in the interim.  *See* Tr. 5-6, Sept. 30, 2011, ECF No. 186.  Perez was nevertheless subject to a reduced

same five-year term of supervised release, consisting of concurrent terms of three years on the marijuana count and five years on the crack, cocaine, and § 924(c) counts. *Id.*

In February 2015, pursuant to Amendment 782 to the Sentencing Guidelines and by agreement of the parties, the Court reduced Perez's total sentence to 157 months, effective November 1, 2015.[4] ECF No. 137.

Perez completed his term of imprisonment and began serving his term of supervised release in June 2016. Less than a year later, on February 23, 2017, Perez was arrested in Philadelphia and charged in state court with homicide and possession of an instrument of crime stemming from a stabbing in a bar on August 20, 2016. *See* ECF No. 138. Based on the new criminal charges,

---

guidelines range at resentencing because of changes to the guidelines pursuant to the Fair Sentencing Act of 2010. The Fair Sentencing Act reduced the disparities between crack and powder cocaine sentencing by increasing the amount of crack cocaine needed to trigger the statutory mandatory minimum penalties under 21 U.S.C. § 841(b)(1)(A) and (B). Following the Act's enactment, "the Sentencing Commission promulgated a temporary amendment, . . . , effective November 1, 2010, to reduce the offense levels in U.S.S.G. § 2D1.1(c) [the drug quantity table] for crack cocaine offenses." *United States v. McKeithan*, 526 F. App'x 158, 160 (3d Cir. 2013). The amendment was later made permanent and retroactive. *Id.* Based on these changes, Perez's advisory sentencing guidelines range at the time of resentencing was 92-115 months, based on an offense level of 26 and a criminal history category of IV. Perez also remained subject to a mandatory minimum consecutive sentence of at least 60 months on the § 924(c) count. The reduced 92-month sentence imposed in 2011 on the crack and cocaine counts was at the bottom of the revised guidelines range.

[4] Amendment 782 "retroactively reduced by two levels the base offense [level] for many drug quantities." *United States v. Martin*, 867 F.3d 428, 430 (3d Cir. 2017). The parties' proposed reduced sentence of 157 months was based on the determination that, with a reduced offense level of 24 and a criminal history category of III, Perez's revised guidelines range through application Amendment 782 was 63-78 months, plus 84 months consecutive. As discussed above, however, Perez's criminal history category at resentencing remained at IV, so his actual revised guidelines range was 77-96 months, plus 84 months consecutive. The reduced 157-month sentence imposed consisted of 73 months on each of the crack and cocaine counts, to run concurrently, plus the same 60-month concurrent sentence the marijuana count and 84-month consecutive sentence on the § 924(c) count. To the extent that Perez seeks a further sentence reduction under Amendment 782, *see* ECF No. 203 at 6, the request is denied as his final sentence was below the bottom of the actual revised guidelines range.

Perez was also charged with violating the terms of his supervised release.[5] *Id.* After lengthy proceedings in state court, including a series of pretrial appeals, Perez was ultimately acquitted of the state charges in November 2021. *See* ECF No. 175-1.

Perez then filed a renewed motion to dismiss the warrant for violation of supervised release and to terminate his remaining period of supervised release based on his acquittal in state court. ECF No. 175. The Court denied the motion in January 2023, finding no bar to considering the acquitted conduct to establish a violation of supervised release so long as the conduct was proved by a preponderance of the evidence. ECF Nos. 188, 189. Following the Court's ruling, the parties reached an agreement to resolve the violation of supervised release whereby Perez agreed not to contest the violations in exchange for a total sentence of 54 months, with no supervised release to follow. *See* Tr. 4-5, Apr. 3, 2023, ECF No. 193. At a violation hearing in April 2023, the Court revoked Perez's supervised release based on the uncontested allegations against him and sentenced him to a total of 54 months, consisting of 36 months on the crack and cocaine counts, 24 months on the marijuana count, and 54 months on the § 924(c) count, all to run concurrently, with no further term of supervised release. ECF No. 196. Perez began serving his revocation sentence in July 2023. *See* ECF No. 197.

A month later, in August 2023, Perez filed a pro se motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) and (B). Perez argues the Court may reduce his revocation sentence under the First Step Act because it is part of the sentence imposed for his 2005 federal drug conviction and the statutory penalties for that conviction were reduced by the First Step Act. Perez also seeks compassionate release under § 3582(c)(1)(A)(i) based on his need to care for his ailing

---

[5] Perez was charged with violating the conditions that he (1) not commit another federal, state, or local crime and (2) not associate with any person convicted of a felony. ECF No. 138.
4

mother and efforts at rehabilitation. Since filing his original motion, Perez has filed numerous supplements. The Government has responded to Perez's filings and opposes any sentence reduction.

**DISCUSSION**

    A.    <u>**First Step Act**</u>

"Section 404(b) of the First Step Act authorizes courts to reduce sentences for 'covered offense[s]' committed before the Fair Sentencing Act of 2010 was enacted." *United States v. Coleman*, 66 F.4th 108, 110 (3d Cir. 2023) (alteration in original) (citation omitted). For purposes of the statute, "[a] 'covered offense' is 'a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act.'" *Id.* (quoting 132 Stat. 5194, 5222 (2018)). Relevant here, Section 2 of the Fair Sentencing Act increased the quantities of crack cocaine necessary to trigger the statutory mandatory minimum penalties for drug offenses under 21 U.S.C. § 841(b)(1)(B) from five grams to 28 grams. *See United States v. Jackson*, 964 F.3d 197, 200 & n.3 (3d Cir. 2020). Under Section 404(b), a court "that imposed a sentence for a covered offense" may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." *Id.* at 200 (quoting 132 Stat. at 5222).

The Government concedes Perez's conviction for Count One, the crack cocaine charge, is a covered offense because Perez was charged with possessing with intent to distribute five grams or more of crack cocaine. At the time Perez was convicted, this offense carried a mandatory minimum penalty of five years and a maximum penalty of 40 years under 21 U.S.C. 841(b)(1)(B). Following enactment of the Fair Sentencing Act, however, the offense falls under 21 U.S.C.

5

841(b)(1)(C), which has no mandatory minimum penalty and a statutory maximum penalty of 20 years.

Because Perez's revocation sentence is part of his sentence for the original crack cocaine offense, he is still serving a sentence for a covered offense for purposes of the First Step Act. *See United States v. Venable*, 943 F.3d 187, 193-94 (4th Cir. 2019). Perez is thus eligible to seek a sentence reduction under Section 404(b). *See id.* at 194. Such relief is discretionary, however. The Act itself provides that "[n]othing in [Section 404] shall be construed to require a court to reduce any sentence pursuant to this section." 132 Stat. at 5222. Thus, "while a district court 'may' impose a reduced sentence, it is not required to do so." *United States v. Easter*, 975 F.3d 318, 327 (3d Cir. 2020), *abrogated on other grounds by Concepcion v. United States*, 597 U.S. 481 (2022).

In determining whether to grant Perez a sentence reduction, the Court "must 'recalculate [his] . . . Guidelines range . . . to reflect [only] the retroactive application of the Fair Sentencing Act.'" *United States v. Holland*, No. 22-2763, 2023 WL 6635072, at *2 (3d Cir. Oct. 12, 2023) (alteration in original) (quoting *Concepcion*, 597 U.S. at 498 & n.6). The Court "then has discretion to impose a reduced sentence considering any intervening changes in law and fact since the imposition of the defendant's original sentence." *Id.*

While Section 2 of the Fair Sentencing Act reduced the statutory penalties to which Perez was subject on the crack cocaine count, the reduced statutory penalties had no effect on Perez's guidelines range.[6] Perez's offense level for the drug trafficking offenses in counts one through

---

[6] The Fair Sentencing Act had no effect on the statutory penalties to which Perez was subject on the other counts. Thus, Perez remained subject to a five-year mandatory minimum and a 40-year statutory maximum on Count Two, the powder cocaine charge.

6

three was determined based on the drug quantity table, and his guidelines range was at all times above the formerly applicable five-year mandatory minimum and below the reduced 20-year statutory maximum. This was true at his original sentencing in 2005, at his resentencing in 2011, and when his sentence was reduced in 2016. *See* nn.1, 3-4, *supra*.

Perez's guidelines range *was* affected by the guidelines amendment that implemented the Fair Sentencing Act by decreasing offense levels for crack cocaine offenses.[7] But Perez received the benefit of that amendment when he was resentenced in 2011 and received a sentence at the bottom of the guidelines. As noted, Perez received a further reduction from a later guidelines amendment in 2015.

As Perez is currently serving a revocation sentence, the Court also considers the impact of the Fair Sentencing Act on his term of supervised release and revocation penalties. Section 2 reduced the mandatory minimum term of supervised release for the crack cocaine count from four to three years, and reduced the applicable guideline range from at least four to five years to at least three years. *See* U.S.S.G. § 5D1.2. It did not alter the statutory maximum term of supervised release, which remained life. *See United States v. Knobbs*, 629 F. App'x 247, 250 (3d Cir. 2015) (holding a district court can "impose[] a term of supervised release up to life" for a conviction under § 841(a)(1), (b)(1)(C) (citing *United States v. Sanchez-Gonzalez*, 294 F.3d 563, 567 (3d Cir. 2002))). Notably, it also did not alter the statutory term of supervised release or the guideline range for the remaining counts, and would not have affected the overall term of supervised release to which Perez was subject. Even if it did, the violation petition that resulted in Perez's current

---

[7] Perez's offense level for the drug trafficking counts was based on the total drug quantity involved, determined after converting the crack and powder cocaine quantities to their marijuana equivalents. The amendment reduced the equivalency ratio for one gram of crack cocaine from 20 kilograms to 3,571 grams of marijuana, causing Perez's offense level to drop from 30 to 26.

7

term of imprisonment was filed less than a year into his supervision, and well within the three-year mandatory minimum to which he would have been subject on crack cocaine count. As the Government notes, there plainly would have been a violation even if the term of supervised release had been modestly shorter. *See* ECF No. 200 at 8.

As to the revocation sentence imposed, as Perez notes, had the Fair Sentencing Act been in effect when his original offenses were committed, the crack cocaine offense would have been a Class C rather than a Class B felony. As such, the maximum revocation sentence that could be imposed would have been 24 months rather than 36 months, *see* 18 U.S.C. § 3583(e)(3), and the applicable guidelines range would have been 24 months rather than 24-36 months, *see* U.S.S.G. § 7B1.4(a), (b)(3). The agreed-upon 54-month revocation sentence in this case consisted of 36 months on the crack and powder cocaine counts, 24 months on the marijuana count, and 54 months on the § 924(c) count, with all terms to run concurrently. ECF No. 196. While the Court has discretion to reduce the revocation sentence on Count One to 24 months, doing so would serve no purpose as the Court is not persuaded a reduction is warranted on the remaining counts.[8]

Perez argues a reduction is warranted based on the § 3553(a) factors and his post-sentencing rehabilitation. The Court disagrees. The offense conduct at issue is extremely serious. Just two months after completing a 157-month sentence for serious drug trafficking and firearms offenses, Perez stabbed another man who later died of his injuries. While he was ultimately acquitted of the murder in state court, the Government was prepared to prove the offense under

---

[8] The Court assumes, without deciding, that it has discretion to reduce the revocation sentence on all counts, including the § 924(c) count. *But cf. United States v. Curtis*, 66 F.4th 690, 694 (7th Cir. 2023) (holding a district court could not consider a § 924(c) sentence for resentencing under the First Step Act where the sentence imposed on that count was "distinct and disaggregated" from the sentence imposed on the covered crack cocaine offenses).

8

lower standard of proof applicable in violation proceedings. *See* Tr. 7, Apr. 3, 2023, ECF No. 193. And although Perez now asserts his innocence, *see* ECF No. 199 at 19-20, he did not contest the charge before this Court, *see* Tr. 5, Apr. 3, 2023, ECF No. 193.

The Court recognizes that Perez has made very significant efforts at rehabilitation and that his recent re-incarceration has caused significant hardship for his family, as discussed below. As the Court noted in resentencing Perez in September 2011 and again at the violation hearing in April 2023, he is not the same person he was when he initially came before the Court. Tr. 32, Sept. 30, 2011, ECF No. 186; Tr. 24, Apr. 3, 2023, ECF No. 193. While on release pending trial on the murder charge, he became a husband and a father, completed professional training, and provided for his family by starting several businesses. At the revocation hearing, the Court commended Perez for his acceptance of responsibility and expressed the belief that he had learned his lesson. *See* Tr. 24, Apr. 3, 2023, ECF No. 193. Indeed, because of the work Perez had done to rehabilitate himself, the Court accepted the parties' agreed-upon sentence of 54 months with no additional term of supervised release to follow, finding it fair in light of the § 3553(a) factors. *See id.* at 24, 28-29. Since he began serving his revocation sentence, Perez has completed numerous educational courses. *See* ECF No. 221 at 4.

While Perez's efforts at rehabilitation are commendable, given the gravity of the violation, granting a sentence reduction would undermine the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. Accordingly, Perez's motion for a sentence reduction under Section 404(b) of the First Step Act will be denied.

### B. <u>Compassionate Release</u>

Perez also seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). That provision "allows a sentencing court to reduce the sentence of a prisoner if 'extraordinary and compelling reasons warrant such a reduction' and the reduction is consistent with both the [Sentencing] Commission's policy statements and the sentencing factors set forth in 18 U.S.C. § 3553(a)." *United States v. Rutherford*, 120 F.4th 360, 364 (3d Cir. 2024).[9] Perez argues his need to care for his ailing mother and his efforts at rehabilitation qualify as extraordinary and compelling reasons warranting a reduction here.[10]

While the existence of extraordinary and compelling reasons is a "threshold eligibility hurdle" for compassionate release, the statute does not further define the phrase. *Id.* at 365 (citation omitted). Instead, Congress "instructed the [Sentencing] Commission to define it." *Id.* (citing 28 U.S.C. § 994(t)). The Commission's definition is set forth in a policy statement codified at U.S.S.G. § 1B1.13, which identifies various circumstances in which extraordinary and compelling circumstances will be deemed to exist.

---

[9] Before filing a motion for compassionate release, a defendant must ask the Bureau of Prisons to bring a motion on his behalf and give the agency 30 days to respond. 18 U.S.C. § 3582(c)(1)(A). Perez submitted a request for a sentence reduction based on family circumstances to the Warden of his correctional institution on July 4, 2023, before submitting his original compassionate release motion for filing on July 31, 2023. *See* ECF No. 199 at 5, 26. Although it appears Perez did not wait a full 30 days before proceeding in court, the 30-day period lapsed just one day after Perez's original motion was filed. Notably, the Government does not contend Perez's motion is unexhausted. The Court will therefore address the motion on the merits.

[10] In a supplement to his compassionate release motion, Perez also invokes the "Acquitted Conduct Bill," an apparent reference to Amendment 826 to the Sentencing Guidelines. *See* ECF No. 221. That Amendment, which took effect on November 1, 2024, excludes "conduct for which the defendant was criminally charged and acquitted in federal court" from the scope of relevant conduct used in calculating a sentencing range under the guidelines. U.S.S.G. § 1B1.3(c). Because it applies only to federally acquitted conduct, this intervening change in the law has no application here.

Relevant here, the policy statement provides that extraordinary and compelling reasons may exist based on "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3).[11] With regard to rehabilitation, the policy statement provides that while "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason," it "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* § 1B1.13(d). The burden is on the movant to demonstrate an extraordinary and compelling reason for a sentence reduction. *See Rutherford*, 120 F.4th at 365.

To establish the need to care for his ailing mother is an extraordinary and compelling reason, Perez must show both that his mother is incapacitated and that he is the only available caretaker for her. Based on the filings to date, he has not sufficiently shown either factor.

As the Sentencing Guidelines do not define incapacitation, district courts in the Third Circuit have looked to the Bureau of Prisons' program statement on compassionate release for guidance. *See, e.g.*, *United States v. Donald*, No. 21-41, 2024 WL 4581209, at *4 (D. Del. Oct. 24, 2024); *United Sates v. Tobolsky*, No. 21-303, 2024 WL 323476, at *3 (D.N.J. Jan. 29, 2024).

---

[11] The policy statement in effect when Perez filed his original motion in August 2023 limited the family circumstances that could qualify as extraordinary and compelling to "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" and "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C) (Nov. 1, 2021). That earlier policy statement applied only to compassionate release motions initiated by the Bureau of Prisons. *United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021). It was not binding on courts considering prisoner-initiated motions, though courts were free to "look[] to it for guidance on the meaning of 'extraordinary and compelling reasons.'" *Id.* at 259-60. An amended policy statement "defin[ing] 'extraordinary and compelling reasons' for prisoner-filed motions" took effect on November 1, 2023, while Perez's motion was pending. *Rutherford*, 120 F.4th at 366-67. The amended policy statement expands the list of extraordinary and compelling reasons that can warrant a sentence reduction, and the Court applies it here.

11

The program statement defines "incapacitation" to mean that a person either (1) has "[s]uffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the [person] is completely disabled, meaning that the [person] cannot carry on any self-care and is totally confined to a bed or chair," or (2) has "[a] severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the [person's] mental capacity or function), but may not be confined to a bed or chair." BOP Program Statement No. 5050.50 at 10 (Jan. 17, 2019), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf (last visited Jan. 3, 2025).

Perez argues his mother is incapacitated based on numerous ailments that compromise her mobility and have caused her health to deteriorate. *See, e.g.*, ECF No. 199 at 4. He maintains that as a result of her many medical conditions, she is unfit to care for herself and requires very significant assistance. *See, e.g.*, *id.*; ECF No. 210 at 2. He notes that prior to his recent incarceration, he was her sole caretaker for several years.[12]

The medical records submitted by Perez confirm that his mother, Flora Perez, at age 71, suffers from numerous ailments with diagnoses including cirrhosis of the liver without ascites,[13] Type 2 diabetes mellitus with hyperglycemia, right shoulder pain, hypertension, hyperlipemia, Vitamin D deficiency, osteoporosis, anxiety, and microcytic anemia.[14] In August 2023, she fell,

---

[12] Perez, his mother, and his wife all assert that from August 2017 until Perez began serving his sentence in July 2023, his mother lived with him, and he was her only caregiver. *See* ECF No. 199 at 4; ECF No. 203 at 74, 85. The Government disputes this, relying on information from Perez's ex-wife, Aminah Shabazz, with whom Perez has twin sons. Shabazz told the Government that while she was incarcerated from November 2018 through September 2020, Perez's mother lived in her New Jersey home and served as the primary caretaker for the twins without need of a caretaker for herself. ECF No. 212 at 4.

[13] ECF No. 199 at 7.

[14] ECF No. 203 at 80.

sustaining abrasions to her right elbow and knee and a possible "nondisplaced fracture" of her right shoulder. ECF No. 203 at 76, 78. Medical records from a doctor's visit after the fall note that the problems for which she was then receiving treatment included fall risk. *Id.* at 79. X-rays taken at that time also revealed severe degenerative joint disease of the right shoulder and mild osteoarthritis of the right knee. *Id.* at 76, 78, 83. Although she was referred to specialists for evaluation and treatment of her diabetes and shoulder pain, *id.* at 79, the record contains no documentation of any follow-up visits. As to her cognitive status, in June 2023, she was diagnosed with "[m]ild cognitive impairment of uncertain or unknown etiology" and referred for a brain MRI, ECF No. 203 at 81, though it is unclear whether an MRI was ever performed.

The medical records do not show, however, that Flora Perez is incapacitated as a result of her significant health issues. They do not show, for example, that she is completely unable to care for herself, much less that she is confined to a bed or chair. And while Perez and his mother both assert she has received care from him in the past, no information is provided as nature or extent of this care.

In April 2024, Perez submitted a one-page letter from a nurse practitioner who opined that Flora Perez "is in need of twenty four hour care" from a caregiver (though not a medical professional). ECF No. 215 at 3. The Court agrees with the Government that the letter is "hardly an expert assessment of Flora Perez's condition." ECF No. 216 at 2. As an initial matter, the nurse practitioner who performed the assessment was employed by Accommodating Healthcare Solutions Outpatient Centers, an organization that, according to its website, offers medication assisted treatment for opioid addiction and mental health treatment, including counseling and therapy. *See* https://ahsopc.com/services (last visited Jan. 3, 2025). Given the focus of her employment, it is not clear the assessor was qualified to offer a medical opinion regarding Flora

13

Perez's care needs. In addition, the opinion appears to have been based solely on a single telehealth[15] visit with Flora Perez and two family members during which Flora completed the "Standardized /Mini-/Mental State Exam," as well as the nurse practitioner's review of discharge documents relating to Flora's fall in August 2023. ECF No. 215 at 3. The letter reports that Flora Perez scored 12/30 on exam, indicating a significant cognitive deficit. *Id.* Even assuming the score is accurate, it translates to moderate dementia, https://www.psychdb.com/cognitive-testing/mmse (last visited Jan. 3, 2025), and thus falls short of the severe cognitive deficit required to show incapacitation. Moreover, as the Government notes, the exam is not precise, and a patient's score may be adversely affected based on a number of factors, including reduced English fluency. *See id.* This is significant in light of the nurse practitioner's observation that English is Flora Perez's second language. ECF No. 215 at 3. Finally, the Court notes that when Perez submitted the nurse practitioner's assessment, he stated he was awaiting a report from his mother's primary physician. *Id.* at 1. Yet he has provided no further medical documentation regarding his mother's cognitive function or other health concerns to date. *Cf. United States v. Walker*, No. 19-928, 2024 WL 580152, at *3 n.2 (D.N.J. Feb. 13, 2024) (noting the need for "verifiable medical documentation regarding [an individual's] incapacitation").

Most recently, in December 2024, Perez submitted one additional page of medical records indicating that Perez's mother fainted on November 15, 2024, suffering a compression fracture of lumbar vertebra, and was referred for follow up with a family medicine doctor and an orthopedist. ECF No. 227 at 15. Perez also submitted a statement from his wife, Zandia Oliver, who visited

---

[15] The letter explains the assessment was conducted via telehealth because Flora Perez refused to attend in person.

Perez's mother at her residence in New Jersey[16] and observed she was in poor physical condition, describing her as "lethargic, frail, and weigh[ing] a mere 92 pounds." *Id.* at 5. Oliver also reported that Flora Perez exhibited signs of poor personal hygiene and that the home was filthy, the mother's medication was empty, and the refrigerator contained spoiled and rotten items. *Id.* These observations are concerning. But they are not sufficient to show incapacitation. *See, e.g.*, *Donald*, 2024 WL 4581209, at *5 ("Difficulties with self-care . . . do not amount to inability or incapacity."). And again, Perez has not provided any further medical documentation regarding his mother's health issues.

In addition, Perez has not adequately shown that he is the only available caregiver for his mother. On this issue, courts have required a "statement and letters of documentation that the inmate is the only family member capable of caring for the [parent]." *Id.* at *4 (alteration in original) (citation omitted); *see also United States v. Thomas*, No. 15-121-3, 2024 WL 3951054, at *2 (E.D. Pa. Aug. 27, 2024) (considering letters from defendant's mother and siblings as to their inability to care for defendant's father).

It is clear that Flora Perez has at least some family in the area, including another son (Perez's brother) and an adult niece, both of whom were with her during her April 2024 telehealth assessment, ECF No. 215 at 3, as well as family friend whom she lived with for some period of time beginning in February 2024, ECF No. 213 at 5. Yet Perez has addressed only his brother's alleged inability to provide care. Even as to his brother, Perez has not provided adequate proof. He argues his brother cannot care for their mother because he lives in Pennsylvania with his girlfriend and her family, lacks a driver's license, and is in treatment for mental health issues,

---

[16] Although Perez's most recent submission reports that Oliver obtained a residence for his mother in New Jersey, it offers no details about her current living situation, including whether she is living alone or with (or near) others.

including addiction. Although Perez produced a 2022 psychiatric evaluation, he has not provided any statement from his brother as to his unavailability to contribute to his mother's care.[17] And while Perez claims the Government's assertion that his mother has sisters, nieces, and nephews who live in the area is a "blatant falsehood," ECF No. 229 at 3, he notes she has family in Florida yet provides no information as to their availability to provide care.[18]

Finally, for the reasons discussed in the preceding section, *see infra* at 8-9, the Court is not persuaded a sentence reduction is consistent with the relevant § 3553(a) factors, including the "the nature and circumstances of the offense," "the history and characteristics of the defendant," and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense[,] [and] . . . to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(B). Perez's motion for compassionate release will therefore be denied.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

[17] Moreover, the Government suggests, based on information from Perez's ex-wife, who maintains contact with Perez's family members to allow visitation with Perez's sons, that Perez's brother has been staying with—or at least caring for—his mother in New Jersey. ECF No. 228 at 2-3.

[18] To the extent that Perez relies on his efforts at rehabilitation as a basis for compassionate release, the Court notes that rehabilitation "is not, by itself, an extraordinary and compelling reasons for purpose of [§ 1B1.13]." U.S.S.G. § 1B1.13(d). While the Court may consider rehabilitation "in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted," *id.*, the Court does not find Perez's rehabilitation, coupled with his family circumstances, provides the "extraordinary and compelling reasons" necessary for compassionate release.